IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

CYNTHIA DIANE ODOM,      )
               )
   Plaintiff,        )
               )  Civil Action No. 1:13-cv-00010
v.             )  Judge Nixon / Knowles
               )
CAROLYN W. COLVIN,      )
**Acting Commissioner of Social Security,** )
               )
   Defendant.       )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on November 17,

1

2009, alleging that she had been disabled since July 31, 2009, due to depression, "bipolar," anxiety, arthritis, irritable bowel syndrome, and migraines. *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 54, 92. Plaintiff's application was denied both initially (TR 53-54) and upon reconsideration (TR 55-56). Plaintiff subsequently requested (TR 66-67) and received (TR 68-85) a hearing. Plaintiff's hearing was conducted on August 24, 2011, by Administrative Law Judge ("ALJ") David A. Ettinger. TR 25-52. Plaintiff and vocational expert ("VE"), Rebecca G. Williams appeared and testified. *Id*.

On October 25, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-24. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since July 31, 2009, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: obesity, bilateral knee osteoarthritis, major depressive disorder and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours; sit for 6 hours; no more than frequently climb, balance, stoop, kneel, crouch or crawl; avoid concentrated exposure to temperature extremes; cannot carry out complex or detailed instructions, maintain

>     attention or concentration for more than two hours without interruption or have more than occasional interaction with others.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on July 9, 1973 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2009, through the date of this decision (20 CFR 404.1520(g)).

TR 14-21.

Plaintiff timely filed a request for review of the hearing decision. TR 7-8. On December 14, 2012, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which

5

significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) did not properly evaluate the opinion of Dr. Koomen, Plaintiff's treating psychiatrist; (2) failed to consider Plaintiff's GAF scores that indicated severe mental limitations; and (3) failed to properly evaluate and assess the credibility of Plaintiff's statements. Docket No. 14-1 at p. 1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Weight Accorded to the Opinion of Plaintiff's Treating Physician**

Plaintiff argues that the ALJ improperly disregarded the July 2011 Medical Source Statement ("MSS") of Dr. Koomen, her treating physician, wherein Dr. Koomen opined that Plaintiff experienced marked limitations in her ability to make judgments on simple work-related decisions and respond appropriately to usual work situations and changes in a routine work setting. Docket No. 14-1, *referencing* TR 416-418. Plaintiff contends that the ALJ "completely rejected" Dr. Koomen's opinions without considering the required factors, and failed to consider other evidence of record that was consistent with Dr. Koomen's evaluation. *Id.* Plaintiff concedes that she and Dr. Koomen completed the MSS together, and that it was based on her responses to Dr. Koomen's questions, but Plaintiff argues that Dr. Koomen "most likely" also considered his examination findings and the totality of the record. *Id.* Plaintiff asserts, therefore, that simply filling out the form together is not sufficient reasoning for the ALJ to reject Dr. Koomen's opinion. *Id.* Plaintiff contends that there is evidence in the record consistent with Dr. Koomen's opinion, and that the evidence indicates that Plaintiff's symptoms were not being adequately controlled on her treatment regiment. *Id.*

Defendant responds that the ALJ properly assessed Dr. Koomen's evaluation because Dr. Koomen's MSS was based upon Plaintiff's subjective statements about her condition, not clinical testing, and was inconsistent with the medical record. Docket No. 19. Defendant argues that the ALJ sufficiently explained his rationale for disregarding Dr. Koomen's evaluation by discussing the lack of supporting medical evidence, its inconsistency with the medical record

(specifically with her consistently assigned GAF scores in the moderate range, her treatment records in general, and the opinions of two medical consultants), and the fact that it was based upon Plaintiff's subjective reports, rather than clinical evidence. *Id*. With regard to Plaintiff's contention that the ALJ should have accepted Dr. Koomen's opined "marked" limitations of her, Defendant responds that the ALJ properly rejected those "marked" limitations because the record demonstrates that: (1) she had improved to "moderate" limitations at worst; (2) her symptoms improved with medication and became worse when she did not take her medication on a regular basis; and (3) those findings were inconsistent with the evidence of record. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[2] *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.3d 431, 435

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

(6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Koomen was Plaintiff's treating psychiatrist, a fact that would justify the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. On July 7, 2011, Dr. Koomen completed a Medical Source Statement ("MSS") regarding Plaintiff, in which Dr. Koomen opined that Plaintiff experienced "mild" limitations in her ability to carry out and remember simple instructions; "moderate" limitations in her abilities to understand and remember simple instructions, and interact appropriately with the public, supervisors, and co-workers; and "marked" limitations in her abilities to make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to usual work situations and to changes in a routine work setting. TR 416-18. Dr. Koomen's sole support for these assertions was thrice noted to be "Patient's responses at 7/7/11." *Id.*

When discussing Dr. Koomen's MSS, the ALJ stated:

> On July 7, 2011, Dr. John Koomen, the claimant's treating psychiatrist, completed a medical source statement indicating that the claimant had multiple marked limitations. Ex. 14F. He

11

> repeatedly indicated, however, that the opinions expressed were not his but were based completely on the claimant's responses to the questions asked. Claimant testified that she and Dr. Koomen completed this form together. I noted that the marked limitations indicated are inconsistent with the claimant's persistent GAF ratings over 50, specifically consecutive GAF scores of 55 on February 7, 2011, March 7, 2011 and May 6, 2011, all of which are indicative of only moderate symptoms and moderate limitations in social and occupational functioning per the DSM-IV-TR (2000 text revision). Ex. 13F. While I believe that the form accurately records claimant's responses to the questions asked, I find that the form is not an accurate statement of the claimant's mental health limitations. I rely on the claimant's treatment records and the opinions of two State agency mental health consultants in concluding that the claimant has the moderate mental limitations described above. Ex. 6F, 7F and 10F.

TR 19-20, *citing* TR 295-98, 299-312, 342, 368-415, 416-18.

As can be seen by the ALJ's explicitly articulated rationale, the ALJ did not simply discount Dr. Koomen's MSS because it was based on Plaintiff's subjective reports, but rather, because it: was based on Plaintiff's subjective reports; was inconsistent with her persistent GAF ratings over 50; was inconsistent with her treatment records; and was inconsistent with the opinions of two State agency mental health consultants.

As has been noted, the opinions Dr. Koomen expressed in his MSS contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As such, the

Regulations do not mandate that the ALJ accord Dr. Koomen's evaluation controlling weight.

Moreover, the ALJ is not bound by conclusory statements or opinions from a physician, particularly when those statements or opinions are unsupported by objective medical evidence, including clinical or laboratory findings. *See, e.g.,* 20 CFR 404.1527(c)(2), (d)(3)(4). Because Dr. Koomen thrice explicitly noted that his opinions were based solely on "Patient's responses at 7/7/11" (TR 416-18), the ALJ was not bound to accept them. Accordingly, Plaintiff's argument fails.

## 2. Clinically Related Group ("CRG") Assessments and Global Assessment of Functioning ("GAF") Scores

Plaintiff also argues that the ALJ erred by "minimizing her mental limitations based solely on select GAF scores," and failed to consider her GAF scores ranging from 45, as well as her August 2009 and April 2010 CRG form assessments that found that she suffered from "marked" limitations. Docket No. 14-1, *referencing* TR 200-01, 395, 399-402. Plaintiff contends, therefore, that the ALJ did not consider all relevant evidence when concluding that she had only "moderate" mental limitations. Docket No. 14-1.

Defendant responds that the ALJ not only considered Plaintiff's CRG assessments and GAF scores, but also considered the record in its entirety and properly assessed Plaintiff's CRGs and GAF scores in light of the record as a whole. Docket No. 19. Defendant argues that the low GAF scores and the CRG assessments "merely give a snapshot of a brief time period where Plaintiff was experiencing worse symptoms, but not necessarily less functional ability," and are inconsistent with the entire record. *Id.* at 12. Defendant contends that their inconsistency with the entirety of the evidence of record provides a sound basis for the ALJ's conclusion that Plaintiff suffered only "moderate" mental limitations. *Id.* at 12-17.

13

As an initial matter, GAF scores are not determinative of disability for Social Security purposes. In fact, the Social Security Administration has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements in [the] mental disorders listings." *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (August 21, 2000). Although "the GAF is a test used by mental health practitioners with respect to planning treatment and tracking the clinical progress of an individual in global terms, the ALJ is not bound to consider its results at the exclusion of other medically reliable evidence." *Alvarez v. Barhart*, 2002 WL 31466411, at *8 (W.D.Tex. October 2, 2002). Nor is a GAF score determinative of an individual's RFC assessment. *Id.* ("A GAF score is not a rating typically relied upon with respect to assessing an individual's RFC under the Act."); *see also Howard v. Commissioner*, 276 F.3d 235, 241 (6th Cir. 2002)(GAF score is not essential in assessing RFC).

Contrary to Plaintiff's assertion that the ALJ failed to properly consider her CRG assessments and GAF scores, the ALJ explicitly, and in detail, discussed Plaintiff's treatment at Centerstone Mental Health Center ("Centerstone") between January 10, 2008 and May 6, 2011 (TR 14, 18-20, *referencing* TR 198-292, 313-40, 368-415). Plaintiff's CRG assessments were conducted by the mental health professionals at Centerstone during the course of her treatment there, and are part of those records. *See* Centerstone records at TR 198-292, 313-40, 368-415. Likewise, the mental health professionals at Centerstone assigned Plaintiff her GAF scores, and those GAF scores are part of the Centerstone records. *See id.* The ALJ's discussion demonstrates that he was not only aware of Plaintiff's treatment at Centerstone, but was also

aware of her subjective complaints to her mental health professionals and their corresponding opinions. TR 14-20. While Plaintiff is correct that the ALJ did not specifically reference her CRGs or GAF scores below 50, in discussing her treatment records and mental health complaints, the ALJ did note several of Plaintiff's GAF scores ranging from 50 to 56. *Id.* Plaintiff has cited no authority for the proposition that the ALJ must discuss every CRG assessment or GAF score in his decision, and the ALJ is not so bound.

When evaluating Plaintiff's mental limitations, the ALJ considered not only Plaintiff's treatment records, but also her Function Reports (TR 15, *referencing* TR 126-33, 152-59), her testimony (TR 19), the MSS of Dr. Koomen (TR 19-20), and the opinions of the State agency medical consultants (TR 19). The ALJ's articulated rationale demonstrates that he considered the evidence of record in its entirety. He reached a reasoned decision that was supported by articulated substantial evidence. The Regulations do not require more. Plaintiff's argument fails.

### 3. Subjective Complaints

Plaintiff contends that in finding that her subjective complaints were not fully credible, the ALJ did not provide a "reasonable basis for discrediting [her] allegations." Docket No. 14-1 at 18. Specifically, Plaintiff contends that the ALJ did not make clear the amount of weight he gave to her statements, but rather, simply "summarized the evidence." *Id*. at 15, 18. Plaintiff also contends that her job search did not, as the ALJ indicated, reflect that she "believed she was capable of performing the jobs she applied for," but rather, simply reflected her desperation over her significant financial difficulties and her concern for providing for her children. *Id.* at 16. Plaintiff additionally argues that her receipt of unemployment benefits likewise was not a

reflection that she considered herself able to work, but again, was a reflection of her financial need. *Id.*

Defendant responds that, while the ALJ organized his credibility discussion in an "atypical manner," the ALJ properly articulated his rationale for not fully crediting Plaintiff's subjective complaints. Docket No. 19. Defendant asserts that the ALJ specifically discussed in detail the ways in which Plaintiff's testimony conflicted with the evidence of record, and noted that Plaintiff's complaints were inconsistent with the stated residual functional capacity ("RFC") assessment. *Id*. With regard to Plaintiff's contentions relating to her job search and receipt of unemployment benefits, Defendant asserts that, while the ALJ cannot base his credibility determination *solely* on the fact that Plaintiff applied for work or received unemployment benefits, the "ALJ absolutely may take into account Plaintiff's statements about her ability to work, and her application for and receipt of unemployment benefits, when assessing [her] credibility." *Id., citing* 20 CFR 1512(b). Defendant argues that the ALJ's articulated rationale in the instant action demonstrates that he properly based his credibility determination on the totality of the record. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective complaints:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

17

> limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> . . .
>
> With regard to the claimant's obesity, . . . it is reasonable to assume that the claimant's weight would contribute to her pain and other symptoms, thereby affecting the degree of functional restriction she experiences. I find accordingly that the claimant's obesity constitutes a severe impairment.
>
> Regarding claimant's severe physical impairments, claimant alleges disability due to arthritis in her knees. However, the medical evidence fails to support the level of limitation alleged.
>
> . . .
>
> Regarding the claimant's severe mental impairments, claimant alleges disability due to depression, bipolar disorder and anxiety. However, the medical evidence fails to support the level of limitation alleged.

TR 17-18.

With respect to the ALJ's determination regarding Plaintiff's mental limitations specifically, the ALJ discussed, *inter alia*, Plaintiff's testimony, her Function Reports, her treatment records from Centerstone, the opinions of two State agency medical consultants, and the opinion of her treating psychiatrist, as well as her job search and receipt of unemployment benefits, clearly indicating that this evidence was considered. TR 14-21.

As has been demonstrated, the ALJ did not discredit Plaintiff solely due to her job search or receipt of unemployment benefits, but rather, considered the entirety of the evidence of record. *See id*. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective

18

medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

The ALJ observed Plaintiff during her hearing, assessed the record in its entirety, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to

this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES  
United States Magistrate Judge